# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# WHEELING

| | |
|---|---|
| **JAMIE STRUBE,** | |
| Plaintiff, | |
| v. | **CIVIL ACTION NO.: 5:18-CV-121 (STAMP)** |
| **ANDREW SAUL,** **Commissioner of Social Security,** | |
| Defendant. | |

## REPORT AND RECOMMENDATION

### I.  INTRODUCTION

This case arises from the denial of Plaintiff Jamie Strube's ("Plaintiff") Title II application for a period of disability and disability insurance benefits ("DIB") and Title XVI application for supplemental security income ("SSI"). After Plaintiff's application proceeded through the administrative process, a United States Administrative Law Judge ("ALJ"), Brian Crockett, concluded that Plaintiff was not disabled within the meaning of the Social Security Act. Plaintiff's request for review by the Appeals Counsel was denied, making the ALJ's decision the final decision of Defendant Andrew Saul ("Commissioner"), the Commissioner of Social Security.[1] Now, Plaintiff seeks judicial review of the Commissioner's decision. Because the Commissioner's final decision to deny Plaintiff's claims for DIB and SSI contains no legal error and is supported by substantial evidence, the undersigned reports and recommends that Plaintiff's Motion for Summary Judgment

---

[1] The undersigned notes that Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019.

[ECF No. 17] be **DENIED** and Defendant's Motion for Summary Judgment [ECF No. 20] be **GRANTED**.

## II.  PROCEDURAL HISTORY

On or about November 17, 2014, Plaintiff filed a claim for DIB and SSI, with an alleged onset date of disability of August 1, 2013. R. 61, 74. Plaintiff's application for DIB and SSI was initially denied on April 27, 2015, and upon reconsideration on July 23, 2015. R. 110, 115, 124, 128. After these denials, Plaintiff requested a hearing before an ALJ. R. 159. On June 5, 2017, a hearing was held before the ALJ. R. 32. The ALJ presided over the hearing in Morgantown, West Virginia. Id. Plaintiff, represented by Steven Slater, Esq., appeared from Martinsburg, West Virginia.[2] R. 12. Casey Bass, a vocational expert, appeared in Morgantown and testified at the hearing. R. 32. On August 10, 2017, the ALJ issued a decision concluding that Plaintiff was not disabled within the meaning of the Social Security Act at any time since August 1, 2013, the alleged onset date of Plaintiff's disability. R. 24. On May 18, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. R. 1.

On July 18, 2018, Plaintiff, through counsel, Scott B. Elkind, Esq., filed a Complaint in this Court to obtain judicial review of the Commissioner's final decision pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g). Compl., ECF No. 1. The Commissioner, through counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed his Answer and the Administrative Record of the proceedings on December 6, 2018. Answer, ECF No. 7; Admin. R., ECF No. 8. Soon thereafter, Plaintiff and the Commissioner filed their Motions for Summary Judgment and supporting briefs.

---

[2] While the transcript of the ALJ hearing indicates that Plaintiff was present in person, the ALJ's decision clearly states that Plaintiff appeared by video from Martinsburg, West Virginia. R. 12, 32.

Pl.'s Mot. Summ. J., ECF No. 17; Def.'s Mot. Summ. J., ECF No. 20. Neither party filed a response.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the administrative record, the undersigned now issues the following Report and Recommendation.

### III.  BACKGROUND

**A.  Personal History**

Plaintiff was born on May 22, 1959, and was fifty-five years old at the time she made her application for DIB and SSI. R. 35. She is 5'3" and weighs approximately 190 pounds. R. 36. Plaintiff is single and lives with her boyfriend in a two-level house. Id. Plaintiff asserts that she last worked August of 2014 for a trucking company. R. 38. Plaintiff alleges that she is permanently and totally disabled due to low back pain and hip problems. R. 61, 74.

**B.  Medical History**

In accordance with the Court's Order Directing Filing of Briefs, the parties were required to produce a stipulation of facts in order to provide the Court with a chronology in narrative form of Plaintiff's relevant medical history. ECF No. 10, at 2. Accordingly, the undersigned relies upon those stipulated facts throughout this report and recommendation. See Mem. Supp. Pl.'s Mot. Summ. J. No. ECF 18, at 2–4; Def.'s Brief Supp. Mot. Summ. J. ECF No. 21, at 3–5.

## IV.   THE FIVE-STEP EVALUATION PROCESS

To be "disabled" under the Social Security Act, a claimant must meet the following criteria:

> [The] individual . . . [must have a] physical or mental impairment or impairments . . . of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . . '[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Social Security Administration uses the following five-step sequential evaluation process to determine whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement [of twelve months] . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a), 416.920(a). "If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional

capacity [("RFC")] based on all the relevant medical and other evidence in your case record, as explained in § 404.1545." 20 C.F.R. §§ 404.1520(e), 416.920(e).

> (iv) At the fourth step, we consider our assessment of your [RFC] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520, 416.920. In steps one through four, the burden is on the claimant to prove that he or she is disabled and that, as a result of the disability, he or she is unable to engage in any gainful employment. Richardson v. Califano, 574 F.2d 802, 804 (4th Cir. 1978). Once the claimant so proves, the burden of proof shifts to the Commissioner at step five to demonstrate that jobs exist in the national economy that the claimant is capable of performing. Hicks v. Gardner, 393 F.2d 299, 301 (4th Cir. 1968). If it is determined that the claimant is "disabled" or "not disabled" during any of the five steps, the process will not proceed to the next step. 20 C.F.R. §§ 404.1520, 416.920.

## V.    ADMINISTRATIVE LAW JUDGE'S DECISION

At step one of the sequential evaluation process outlined above, the ALJ concluded that Plaintiff had not engaged in any substantial gainful activity since the August 1, 2013, alleged onset date of Plaintiff's disability. R. 14. At step two, the ALJ found that Plaintiff suffers from the following severe impairments: degenerative disc disease of the lumbar spine, status post decompression partial laminectomy, partial foraminotomy, partial facetectomy, and pedicle screw rod instrumentation from L4 to S1 in February 2015 and hardware removal in June 2015 and obesity. Id. At step three, the

5

ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments. R. 17–18. At step four, the ALJ determined that Plaintiff has the RFC "to perform a range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) subject to some additional nonexertional limitations. More specifically, the claimant is able to perform all postural activities occasionally, but must avoid concentrated exposure to extreme cold, vibration, and hazards." R. 18. The ALJ then determined that Plaintiff is able to perform her past relevant work as a cashier, as it is generally performed in the national economy, because that work "does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity." R. 22–23. Thus, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act. R. 24.

## VI.   DISCUSSION

**A.   Scope of Review**

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the United States Court of Appeals for the Fourth

Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ['s]." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).

**B.    Contentions of the Parties**

Plaintiff contends that the ALJ committed two errors in his decision. ECF No. 18, at 5, 9. Specifically, Plaintiff submits that: (1) "the [ALJ] erroneously evaluated the Plaintiff's subjective complaints" and (2) "the [ALJ] erroneously assessed the Plaintiff's residual functional capacity." Id. at 5, 9. For these reasons, Plaintiff requests that the Court reverse the ALJ's decision. Id. at 12.

Conversely, the Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed as a matter of law. ECF No. 20, at 1. Addressing Plaintiff's arguments for summary judgment, the Commissioner avers that: (1) substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not entirely supported by the record and (2) the ALJ's RFC finding was supported by substantial evidence and permits meaningful judicial review. ECF No. 21, at 7, 12. Accordingly, the Commissioner requests that the Court grant his motion for summary judgment and affirm his final decision. Id. at 15.

**C.   Whether the ALJ's Decision Was Conducted in Conformity with the Law and Is Supported by Substantial Evidence**

   **1.   The ALJ's Credibility Assessment of Plaintiff is Supported by Substantial Evidence**

Plaintiff argues that when the ALJ was evaluating her subjective allegations of pain, the ALJ "specifically determined that Plaintiff was not credible, but failed to provide any assessment of which of the Plaintiff's statements he found to be credible, and which he did not." ECF No. 18, at 5–6. Additionally, Plaintiff argues that the ALJ mischaracterized the record specifically by considering the types of activities Plaintiff could allegedly perform without also considering the extent to which she could perform them. Id. at 9.

Because the ALJ has the opportunity to observe the demeanor of the claimant, the ALJ's observations concerning the claimant's credibility are given great weight. Shively, 739 F.2d at 989–90. This Court has determined that "[a]n ALJ's credibility determinations are 'virtually unreviewable' . . . ." Ryan v. Astrue, No. 5:09CV55, 2011 WL 541125, at *3 (N.D. W. Va. Feb. 8, 2011). "If the ALJ meets . . . her basic duty of explanation, then 'an ALJ's credibility determination [will be reversed] only if the claimant can show [that] it was 'patently wrong.'" Criss v. Comm'r Soc. Sec., No. 5:16CV86, 2017 WL 2730647, at *3 (N.D. W. Va. June 26, 2017) (alteration in original) (citations omitted). The ALJ's "determination . . . must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

"[I]n assessing the credibility of a claimant's statements about pain and its functional effects, the ALJ is supposed to consider whether there are 'any conflicts between [a claimant's] statements and the rest of the evidence, including [the claimant's] history, the signs and laboratory findings, and statements by [the claimant's] medical sources or other persons about how [the claimant's] symptoms affect [her].'" Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1529(c)(4)). "According to the regulations, the ALJ 'will not reject [the claimant's] statements about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements." Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017) (quoting 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2)). While the ALJ is required to build an accurate and logical bridge from the evidence to his conclusion that a claimant's testimony is not credible, see Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016), "it is the ALJ's duty, not this Court's, to determine the facts and resolve inconsistencies between a claimant's alleged impairments and his ability to work." Redditt v. Colvin, No. 7:13-cv-391, 2014 WL 2800820, at *6 (W.D. Va. June 18, 2014).

In the instant case, the ALJ evaluated the credibility of Plaintiff's allegations that she is disabled "due to limitations imposed by low back pain." R. 19. More specifically, the ALJ evaluated the credibility of Plaintiff's allegations that despite treatment, Plaintiff "continues to have difficulties with low back pain that radiates into her bilateral lower extremities, which impact her ability to sit, stand, walk, or go up and down stairs." Id.; R. 44. The ALJ also evaluated the credibility of Plaintiff's allegations that "she is only able to

sit for 30 minutes at one time and stand for 5 minutes at one time, and walk for 10 minutes at one time." R. 19, 45, 48, 49.

Following the required two-step analysis, the ALJ determined that Plaintiff's "medically determinable impairments could reasonable be expected to produce [her] alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not fully consistent with the totality of her treatment evidence and other factors discussed throughout [the ALJ's] decision . . . ." R. 19. More specifically, the ALJ concluded that Plaintiff's

> statements concerning her impairments and their impact on her ability to work are not entirely supported in light of the degree of medical treatment required, discrepancies between [Plaintiff's] assertions and information contained in the documentary reports, the medical history, the findings made on examination, [Plaintiff's] assertions concerning her ability to work, and the reports of the reviewing, treating[3] and examining physicians.

R. 21.

First, the ALJ provided an in-depth, narrative discussion of Plaintiff's medical treatment history for her low back pain. R. 19–20. Plaintiff's low back pain began in 2013, and an x-ray in November 2014 revealed lower lumbar spondylosis associated with stable grade 1 anterolisthesis at L4 and L5. R. 19, 391. An MRI revealed multilevel degenerative disc disease most severe from L4 to S1. R. 19, 392–93. During this time, the physical examinations of Plaintiff revealed intermittent tenderness or pain with range of motion and decreased sensation in the left lower extremity. R. 19; see R. 358, 361–62, 368. Plaintiff also consistently appeared in no acute distress, appeared healthy, showed no evidence of muscle atrophy, and had 5/5 strength in all four extremities and grip strength.

---

[3] The record does not appear to contain any treating physician opinions.

10

R. 19; see R. 358, 362, 368. Examinations of Plaintiff's neurological system were also relatively benign, e.g., Plaintiff was regularly able to heel rise, toe rise, and heel walk. R. 19–20; see R. 358, 362, 368.

In February 2015, Plaintiff elected to undergo spinal surgery for her lower back pain; she had spinal decompression, a partial laminectomy, a partial foraminotomy, a partial facetectomy, and a pedicle screw rod instrumentation from L4 to S1. R. 20, 406. Plaintiff used a back brace and walker for a short period of time after her surgery. R. 20, 413. Plaintiff continued to improve. R. 20, 413 (on February 25, 2015, Plaintiff's surgeon reviewed a CT of Plaintiff's lumbar spine and did not recommend any further treatment besides weaning Plaintiff off of Ultram and hydrocodone). Another x-ray taken on March 23, 2015, indicated that Plaintiff's fusion was stable and that there was no evidence of hardware failure. R. 20, 456.

Unhappy with the results of her back surgery, Plaintiff sought a second opinion with Dr. Swami Nathan. R. 20, 44, 461. In June 2015, Dr. Nathan[4] removed Plaintiff's spinal rod and screws that were originally implanted in February 2015. R. 20, 461. After this procedure, Plaintiff continued to follow-up with Dr. Nathan through April 2017. R. 20, 633. During that time, Dr. Nathan noted some tenderness in Plaintiff's spine, but otherwise his physical examinations of Plaintiff did not note any motor, sensory, deep tendon reflexes, plantar, or straight leg raising abnormalities. R. 20, 633–646.[5] An updated x-ray of Plaintiff's lumbar spine, taken in June 2015, revealed intervertebral disc

---

[4] The undersigned notes that the ALJ inverted Dr. Nathan's first and last names and calls him by "Dr. Swami" in his decision. See R. 20.
[5] While Dr. Nathan's handwritten office notes are difficult to read in places, the ALJ's interpretation appears to be largely accurate. See, e.g., R. 633 (SLR: -), 635 (Spine: tend[er]), 638 (Spine: tender), 643 (Motor: no weakness), 644 (Motor: no weakness).

11

spacers from L4 to S1 with gross anatomic alignment. R. 20, 648. Dr. Nathan continued Plaintiff on pain medication, including oxycodone, carisoprodol, and gabapentin for her complaints of pain and tenderness. R. 20, 633–646.

From these records, the ALJ noted that since Plaintiff's second back surgery, she had primarily taken routine pain medications for her symptoms and did not require any other forms of more aggressive treatment. R. 21–22. The ALJ also noted that no more aggressive treatment was recommended to Plaintiff after her second back surgery and the findings on Plaintiff's physical examinations were relatively benign. R. 22. Finally, the ALJ noted that Plaintiff had not reported any adverse side effects from her prescribed treatment. Id.

Second, the ALJ concluded that Plaintiff's activities of daily livings ("ADLs") "are inconsistent with reports that she has been disabled since the alleged onset date of August 1, 2013." R. 21. Plaintiff reported in her Adult Function Report that she can:

1. Perform her own personal care without reminders [R. 16, 248–49],
2. Take her medications without reminders [R. 16, 249],
3. Pay attention for as long as needed [R. 16, 252],
4. Prepare simple meals [R. 16, 249],
5. Perform light household shores [R. 16, 249],
6. Drive a vehicle [R. 16, 250],
7. Shop in stores [R. 16, 250],
8. Pay bill/handle finances [R. 16, 250],
9. Watch television [R. 16, 251],
10. Play computer games [R. 16, 251],
11. Visit with her daughters at least once a week [R. 16, 251],
12. Go places alone and without reminders. R. 16, 251.[6]

---

[6] The undersigned notes that the record contains two Adult Function Reports (Exhibits 1E and 8E). The first function report was completed on December 4, 2014, before Plaintiff had any back surgeries. R. 254. The second function report was completed on June 30, 2015, less than one month after Plaintiff's second back surgery which removed the spinal rod and pins. While the ALJ cites to both exhibits in his decision, the ALJ's discussion of Plaintiff's ADLs clearly comes nearly verbatim from Plaintiff's first function report (Exhibit 1E). R. 247–54. While there are some discrepancies between Plaintiff's first and second function reports, in no way did the ALJ mischaracterize the record as Plaintiff alleges. See ECF No. 18, at 7.

The ALJ concluded that Plaintiff had described daily activities that are not limited to the extent one would expect given Plaintiff's complaints of disabling symptoms and limitations. R. 21.

Finally, the ALJ gave great weight to the opinions of the state agency consultants who determined that Plaintiff is capable of performing "a range of light exertional work as long as it does not require performing postural activities occasionally or involve concentrated exposure to extreme cold, vibration, and hazards." R. 20, 68–69, 81–82, 94–95, 106–07. The ALJ determined that the state agency consultants' opinions were consistent with Plaintiff's treatment and consistent with the longitudinal review of the evidence of record with regard to Plaintiff's physical symptoms. R. 20.

Plaintiff's allegations that the ALJ's credibility determination is so vague as to be meaningless [ECF No. 18, at 6] only gain traction when small parts of the ALJ's decision are read in isolation from the whole. Considering the ALJ's credibility determination as a whole (i.e. R. 18–22), it is clear that the ALJ did not find Plaintiff's allegations that she can only sit for 30 minutes, stand for 5 minutes, and walk for 10 minutes at one time entirely credible. R. 19. In so determining, the ALJ considered Plaintiff's medical treatment and history (including Plaintiff's treating physicians' largely benign physical findings, their lack of a recommendation for more aggressive treatment, and Plaintiff's lack of reported side effects of treatment), Plaintiff's reported ADLs, and the state agency consultants medical opinions. Accordingly, the ALJ did not err as Plaintiff alleges, and his credibility determination is supported by substantial evidence.

13

### 2. The ALJ's Determination of Plaintiff's RFC Does Not Frustrate Meaningful Review and Is Supported by Substantial Evidence

Plaintiff argues that the ALJ failed to perform a proper function-by-function analysis in determining Plaintiff's RFC. ECF No. 18, at 10. More specifically, Plaintiff alleges that the ALJ failed to recognize Plaintiff's ongoing radiculopathy and failed to include any limitations in the RFC to accommodate Plaintiff's post-operative residuals.[7] Id. at 11. Plaintiff argues that her RFC should have included some level of standing and walking limitation, which limitation would have precluded Plaintiff from performing her past-relevant work as a cashier. Id. at 12.

"The process for assessing RFC is set out in Social Security Ruling 96-8p." Monroe v. Colvin, 826 F.3d at 187 (citing Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)); see also SSR 96-8p, 1996 WL 374184 (July 2, 1996). "Under that ruling, the assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Monroe, 826 F.3d at 187 (internal quotations omitted) (citations omitted). Only once the ALJ considers a claimant's abilities on a function-by-function basis may he then express the claimant's RFC in terms of exertional levels of work. See id. The ALJ should take care not to express the claimant's RFC in terms of exertional levels of work *first* and *then* conclude that the limitations caused by the claimant's impairments are consistent with the RFC. See id. at 188. "[E]xpressing the RFC before analyzing the claimant's limitations function by function creates the danger that 'the adjudicator [will] overlook limitations or restrictions that would narrow the ranges and types of work an

---

[7] Plaintiff notes that Dr. Nathan reported absent ankle jerks, bilaterally, in his physical examinations of Plaintiff after her second surgery. ECF No. 18, at 11; R. 633–46.

individual may be able to do.'" Id. at 187–88 (quoting Mascio, 780 F.3d at 636). Additionally, "the residual functional capacity 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" Mascio, 780 F.3d at 636 (quoting SSR 96-8p, 1996 WL 362207).

Although the ALJ is required to conduct a function-by-function analysis before expressing a claimant's RFC, the United States Court of Appeals for the Fourth Circuit has not adopted "a per se rule requiring remand when the ALJ does not perform . . . [said] analysis." Mascio, 780 F.3d at 636. Instead, the Fourth Circuit has taken the approach that "remand *may* be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Monroe, 826 F.3d at 188 (emphasis added) (quoting Mascio, 780 F.3d at 636). Accordingly, the Court must first determine whether the ALJ failed to assess Plaintiff's capacity to perform relevant functions. See id. If so, the Court must then determine whether the ALJ's failure frustrates meaningful review because of contradictory evidence or other inadequacies in the record. See id. "[A] proper function by function analysis conducted by a state agency consultant can satisfy an ALJ's requirement to conduct a function by function assessment" because these assessments, if given weight by the ALJ, "provide support for the ALJ's RFC determination and allow the Court to conduct a meaningful review of the ALJ's analysis." Sineath v. Colvin, 1:16CV28, 2016 WL 4224051, at *5 (M.D.N.C. Aug. 9, 2016), report and recommendation adopted, No. 1:16-CV-28, M.D.N.C. Sept. 13, 2016, ECF No. 18.

In the instant case, the undersigned concludes that the ALJ's decision does not frustrate meaningful review because the record is adequate and it substantially supports the ALJ's RFC determination. As discussed in detail in Section VI.C.1., the ALJ considered all the evidence of record including Plaintiff's medical treatment and history, her reported ADLs, and the opinions of the state agency consultants. Indeed, the ALJ's review of the record was so thorough that there were no relevant[8] medical records that were not part of the ALJ's narrative discussion. The ALJ concluded that Plaintiff "has some abnormalities that are likely to impose some functional limitations" and that the RFC "is supported by some of [Plaintiff's] own subjective allegations, the objective findings, [Plaintiff's] response to her prescribed treatment, the opinions of the [s]tate agency medical consultants, and the record as a whole." R. 22.

While the ALJ's decision does not list any limitations specifically, the ALJ gave great weight to the state agency consultants' opinions which do list specific functional limitations. R. 68–69, 81–82, 93–94, 105–06. Those opinions concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk about 6 hours in an 8-hour workday, and sit (with normal breaks) about 6 hours in an 8-hour workday with no push/pull limitations and all postural and environmental limitations as stated in the ALJ's RFC. R. 68–69, 81–82, 93–94, 105–06. The state agency consultant on Plaintiff's reconsideration acknowledged that Plaintiff had some mild decreased sensation and spinal tenderness, but no other neurological deficits, and that Plaintiff could heel/toe walk and had good 5/5 strength. R. 93, 105. The ALJ noted the same medical findings in his decision to support his RFC determination. R. 19, 19–20.

---

[8] "Relevant" means medical records related to Plaintiff's lower back pain.

16

Plaintiff points to Dr. Nathan's office notes after Plaintiff's second back surgery to argue that the ALJ's RFC is not supported by substantial evidence. ECF No. 18, at 11; R. 633–46. But the ALJ clearly reviewed those notes in detail, in the context of all the evidence, and determined that they did not provide enough evidence, compared to the other evidence in the record, to impose a standing and walking limitation. It is not this Court's role to reweigh conflicting evidence. Johnson, 434 F.3d at 653. Because the undersigned was able to conduct a meaningful review of the ALJ's RFC determination and find that it is supported by substantial evidence, the undersigned must conclude that the ALJ did not err in his RFC determination.

## RECOMMENDATION

For the reasons herein stated, I find that the Commissioner's decision denying Plaintiff's claim for DIB and SSI contains no legal error and is supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment [ECF No. 17] be **DENIED**, Defendant's Motion for Summary Judgment [ECF No. 20] be **GRANTED**, the decision of the Commissioner be **AFFIRMED**, and this case be **DISMISSED WITH PREJUDICE**.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection**. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. **Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit**

**Court of Appeals**. See 28 U.S.C. § 636(b)(1); Wright v. Collins, 766 F.2d 841, 845–48 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); see also Thomas v. Arn, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Respectfully submitted this 23rd day of July, 2019.

_____
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE